IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NATIONAL ASSOCIATION FOR THE      *
ADVANCEMENT OF COLORED
PEOPLE, INC.,      *

     Plaintiff,      *

v.      *      **CIVIL NO. JKB-25-4245**

ERNEST L. JOHNSON,      *

     Defendant.      *

*    *    *    *    *    *    *    *    *    *    *    *

## MEMORANDUM

The National Association for the Advancement of Colored People, Inc. ("NAACP") filed suit against Ernest L. Johnson, who proceeds pro se. (ECF No. 1.) Johnson has filed a Motion to Dismiss. (ECF No. 6.) For the reasons that follow, the Complaint will be dismissed.

### I.   *Factual Background[1]*

The NAACP has filed suit against Johnson, seeking indemnification for legal fees arising out of a separate action in Louisiana state court. (*See generally* ECF No. 1.) It alleges that its constitution (the "Constitution") "is the controlling document outlining the policy and procedures of the NAACP." (*Id.* ¶ 14.) To become a member, the NAACP alleges, Johnson "agreed (a) to abide by the rules and policies of the NAACP (including those set forth in the Constitution) and the decisions of the Board of Directors; and (b) to pay the annual membership fee established by the Board of Directors. . . ." (*Id.* ¶ 15 (citing Constitution, Article IV § 1).) The NAACP attached

---

[1] The Court refers to the allegations in the Complaint as well as information contained in documents attached thereto. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (allowing courts to consider documents "explicitly incorporated into the complaint by reference" and "those attached to the complaint as exhibits").

a copy of the Constitution to its Complaint. (ECF No. 1-1.) That document does not contain any signatures or other manifestations of assent by Johnson. (*Id.*) The provision to which the NAACP cites provides that

> [a]ny person in accord with the principles and policies of the Association may become a member with the consent of the Board of Directors. Such person shall become a member by agreeing to abide by the rules and policies of the Association and the decisions of the Board of Directors and by paying in advance the annual membership fee established by the Board of Directors.

(*Id.* at 6–7 (Constitution Art. IV § 1).)

The NAACP alleges that "[a]ll Members of the NAACP between March 2019 and March 2022, including Defendant Johnson, agreed to be bound by the following provision contained in the Constitution:"

> A member or Unit that commences any external action, suit or proceeding against the Association or any Unit thereof, or against any director, officer, employee or member of the Association or any Unit thereof with respect to matters concerning the internal operations of the Association, shall indemnify the Association, the Unit, and all directors, officers, employees and members of the Association and Unit, for all costs and attorney fees incurred in connection with defending against such external action, suit or proceeding, irrespective of the outcome of such action, suit or proceeding. In any action brought by the Association to recover such costs and attorney fees, the member or Unit involved consents to the personal jurisdiction of any state or federal court in Baltimore, Maryland, and agrees that any litigation concerning the recovery of such costs and attorneys fees shall be brought in a state or federal court in Baltimore, Maryland.

(*Id.* ¶ 16 (emphasis omitted); *see also* ECF No. 1-1 at 8 (Constitution, Art. IV § 3).) The NAACP asserts that Johnson is a "currently-suspended lifetime member of the NAACP who served on the National Board of Directors from 2007 until February 2019." (ECF No. 1 ¶ 13.)

The Louisiana state court action underlying the NAACP's indemnification request relates to the NAACP's organization and to the NAACP's suspension of Johnson in 2020. "The National Association for the Advancement of Colored People, Inc. was originally incorporated in 1911 in New York as a non-profit organization pursuant to Section 501(c)(3) of the Internal Revenue Code." (ECF No. 1-2 at 4.) In March 2019, Derrick Johnson (President and Chief Executive

Officer of the organization), filed a certificate of amendment, changing the organization's name to "NAACP Empowerment Programs, Inc." (*Id.*) Also in March 2019, "[a] certificate of incorporation was also filed . . . registering the National Association for the Advancement of Colored People as a Delaware corporation, organized and incorporated pursuant to Section 501(c)(4) of the Internal Revenue Code." (*Id.*) Although not contained in the Complaint and therefore not an allegation in this case, for clarity, the Court notes that Johnson originally became of member of the 501(c)(3) organization and he contests that his membership was validly transferred to the 501(c)(4). (ECF No. 6-1 at 16–17.) Johnson's membership in the NAACP was suspended in a letter dated September 25, 2020. (ECF No. 1-2 at 4.) The reason given was that Johnson had "prepared and issued a press statement 'falsely suggest[ing]' that Derrick Johnson, in his individual capacity, took and used the name 'NAACP' to incorporate a new 501(c)(4) entity in Delaware without authorization and without informing the NAACP Board of Directors." (*Id.* at 5.)

On September 24, 2021, Johnson filed a Petition for Writ of Quo Warranto in Louisiana state court against the NAACP and Derrick Johnson. (ECF No. 1 ¶ 17.) "[A] quo warranto is a writ directing a corporation or limited liability company to show by what authority it exercises certain powers." (ECF No. 1-2 at 7.) Johnson "sought a writ of quo warranto (1) directing Derrick Johnson to show by what authority he holds his office as president and chief executive officer of the 504(c)(4); (2) directing both defendants to show by what authority they suspended his membership in either the 501(c)(3) or the 501(c)(4); and (3) directing the 501(c)(4) to show what authority, if any, it has to transfer assets and/or members from the 501(c)(3) to the 501(c)(4) or any other organization." (ECF No. 1-2 at 5–6.)

The trial court considered only the second issue, because the limitations period had run with respect to the first and third issues. (*Id.* at 6.) The trial court denied Johnson's demand for a

3

writ of quo warranto, and Johnson appealed. (*Id.*) The appeals court explained that:

> [W]e do not consider whether the 501(c)(4) had the authority to transfer Mr. Johnson's NAACP membership nor do we address how the transfer was accomplished. To the extent it is pertinent to the narrow, sole remaining issue on appeal, i.e., the authority to suspend Mr. [Johnson's] membership, we conclude that the trial court's finding that Mr. Johnson's membership was, in fact, transferred is supported by the record . . . . The governing documents for both entities reflect that all provisions related to membership were removed from the 501(c)(3) as of March 6, 2019 and are now contained in the Constitution and Bylaws for the 501(c)(4).
>
> Therefore, the issue is not whether Derrick Johnson and the 501(c)(4) had the authority to suspend Mr. Johnson's membership in the 501(c)(3), as Mr. Johnson argues. Rather, the only remaining issue is whether the 501(c)(4) had the authority to suspend Mr. Johnson's membership in the 501(c)(4). Again, we find the trial court's factual conclusion on this issue is supported by the record.

(*Id.* at 8–9.) The appellate decision ordered Johnson to pay all costs of the appeal. (*Id.* at 10.)

The NAACP alleges that it paid for the defense costs for itself and Derrick Johnson in defending the trial and appellate court actions. (ECF No. 1 ¶¶ 23, 27.) It alleges that it has not been reimbursed by Johnson, as it contends is required by the Constitution. (*Id.* ¶¶ 28–31.) The NAACP filed the instant breach of contract action, seeking indemnification. (*Id.* ¶¶ 32–43.)

## II.    *Legal Standard*

Both parties cite Federal Rule of Civil Procedure 12(b)(2), which permits a defendant to file a motion to dismiss for lack of personal jurisdiction. Under Rule 12(b)(2), a defendant can challenge a court's personal jurisdiction over him. "When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff ultimately bears the burden of proving to the district court judge the existence of jurisdiction over the defendant by a preponderance of the evidence." *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005). "But when, as here, the court addresses the question on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Id.* (citation and internal quotation marks omitted). The court "must construe all

4

relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id.* (citation and internal quotation marks omitted).

### III. *Analysis*

The NAACP argues that the Court's jurisdiction is premised on the forum selection clause in the Constitution.[2] (ECF No. 7 at 6.) Johnson argues that he never assented to the forum selection clause. (ECF No. 6-1 at 10–12.) For the following reasons, the Complaint will be dismissed.[3]

"Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982). "A variety of legal arrangements have been taken to represent express or implied consent to the personal jurisdiction of the court." *Id.* This can include agreements "to submit to the jurisdiction of a given court." *Id.* at 704 (citation and quotation marks

---

[2] In its Complaint, the NAACP also argues that "[t]his Court has personal jurisdiction over Defendant Johnson pursuant to Md. Code Ann., Cts. & Jud. Proc., § 6-103(b)(6), as Defendant's contractual obligation to indemnify the NAACP is required to be performed in Maryland." (ECF No. 1 ¶ 4.) The NAACP has apparently abandoned this argument. (*See* ECF No. 7 at 10 ("At this time, the NAACP focuses on the mandatory and exclusive forum selection clause to which Defendant agreed.").) In any event, the NAACP does not cite to any contractual provision, other than the indemnification and forum selection clause (which will be discussed in greater detail below), that would confer personal jurisdiction over Johnson.

The NAACP also asks that "[s]hould the Court find that the jurisdictional record is not sufficiently developed, the NAACP respectfully requests that the Court defer ruling on this Motion pending jurisdictional discovery." (ECF No. 7 at 10 n.2.) The NAACP cites *Clark v. Ducati N. Am., Inc.*, Civ. No. WMN-11-3506, 2014 WL 13141162, at *4 (D. Md. Apr. 15, 2014) for the proposition that "when a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised before a ruling is made on the motion." (ECF No. 7 at 10 n.2.) However, the NAACP neglects to cite the next sentence of that opinion, which provides that "[w]here the pleadings present factual allegations that could establish the requisite contacts with Maryland, a court may appropriately grant jurisdictional discovery." *Clark*, 2014 WL 13141162, at *4. As described in more detail below, the NAACP's Complaint does not present factual allegations that could establish personal jurisdiction over Johnson. The Court will not permit jurisdictional discovery where the Complaint is devoid of factual allegations sufficient to establish personal jurisdiction over Johnson.

[3] Because the Court finds that dismissal is required based upon its lack of personal jurisdiction, the Court does not address Johnson's many other arguments in favor of dismissal.

omitted); *see also CoStar Realty Info., Inc. v. Field*, 612 F. Supp. 2d 660, 668 (D. Md. 2009) ("[A] valid forum selection clause, standing alone, is enough to confer personal jurisdiction on a nonresident defendant." (collecting cases).)[4]  The Court thus examines whether Johnson consented to jurisdiction in this forum.

Johnson argues that he never agreed to the forum selection clause in the Constitution. (ECF No. 6-1 at 10–12.)  He explains that he purchased his lifetime membership in 2010 and that the membership form "contains no mention of a constitution, governing rules, or a forum for disputes." (ECF No. 6-1 at 11.)  He argues that "[t]he clause first appeared in a constitution adopted nearly a decade after Defendant's membership began" and that the NAACP "alleges no facts showing that [he] received this document, [that the NAACP] notified him of its adoption, or [that the NAACP] took any action affirming his agreement to its updated terms." (*Id.*)  He also argues that, by September 2020 (i.e., before he filed suit against the NAACP in Louisiana state court), the NAACP had suspended his membership and he was thus no longer bound by the Constitution. (*Id.*)

The NAACP fails to sufficiently allege that Johnson agreed to be bound by the Constitution (and thus the forum selection clause).  In its Complaint, the NAACP alleges that "[t]o become a Member, Defendant Johnson agreed: (a) to abide by the rules and policies of the NAACP (including those set forth in the Constitution) and the decisions of the Board of Directors; and (b) to pay the annual membership fee established by the Board of Directors . . . ." (ECF No. 1 ¶ 15 (citing Constitution, Article IV § 1).)  NAACP's allegation is circular: it cites to the Constitution—which itself contains no indication that Johnson agreed to be bound by it—to allege that Johnson agreed to its terms.  The NAACP does not even allege that it ever provided Johnson with a copy

---

[4] Johnson argues that "[t]he Fourth Circuit's rule in *Foster v. Arletty* ruled that '[a] forum selection clause cannot confer personal jurisdiction where it otherwise would not exist.'" (ECF No. 6-1 at 10 (citing *Foster v. Arletty*, 278 F.3d 409, 413 (4th Cir. 2002).)  However, that quote appears nowhere in the *Foster* case. Indeed, the Court could not locate that language in *any* federal court opinion.

of the Constitution, let alone facts that would allow the Court to conclude that Johnson assented to its terms.

Other than its circular citation to the Constitution, the NAACP does not otherwise allege that Johnson agreed to be bound by the Constitution. True enough, the NAACP states in its Opposition to the Motion to Dismiss that "Defendant Johnson entered a membership agreement with the NAACP whereby he agreed to be bound by the NAACP's constitution ('Constitution') and bylaws ('Bylaws') as a condition of membership ('Membership Agreement')." (ECF No. 7 at 5.) However, as an initial matter, the NAACP does not mention a membership agreement anywhere in its Complaint, and "[i]t is axiomatic that a Plaintiff cannot amend a complaint through a responsive pleading." *Winkler v. Medtronic, Inc.*, Civ. No. PX 18-00865, 2019 WL 6052702, at *3 (D. Md. Nov. 15, 2019). Further, the NAACP's statement regarding the membership agreement is entirely conclusory and provides no detail regarding a purported membership agreement.[5]

The NAACP also states in its Opposition that "[a]s a condition of membership, each individual, including Defendant Johnson, is required to agree to: (a) abide by the rules and policies of the NAACP (including those set forth in the Constitution) and the decisions of the Board of Directors; (b) pay the annual membership fee established by the Board of Directors; and (c) be bound by" the forum selection and indemnification provision. (ECF No. 7 at 7.) However, again, the NAACP may not amend its Complaint via briefing. And again, the NAACP does not explain where Johnson agreed to be bound by the Constitution. The NAACP's statement that Johnson

---

[5] Further, Johnson provides a copy of his membership agreement, which contains no reference at all to the Constitution, Bylaws, or policies or procedures. (ECF No. 6-3.) Thus, to the extent the NAACP seeks to amend its Complaint to include reference to the Membership Agreement, the Court would consider the agreement attached to Johnson's Motion to Dismiss. *See Goines*, 822 F.3d at 166 (permitting a court to consider documents incorporated into the complaint by reference and documents "submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity").

7

"agree[d] to . . . be bound by" the forum selection and indemnification provision is entirely unsupported by any factual allegations (other than, again, a citation to the Constitution itself).

Having failed to sufficiently allege that Johnson agreed to be bound by the Constitution, the NAACP makes several other arguments in an attempt to avoid dismissal. None of these arguments are availing.

First, it argues that "[p]utting aside the fact that he assented to the Constitution at the time he joined the NAACP, it cannot be disputed that Defendant Johnson assented to/ratified the NAACP's Constitution in effect at the time he ran for national office and held such position for ten years, and when [he] filed suit in 2021." (ECF No. 7 at 18.) It argues that "Defendant, who is a lawyer, cannot plausibly argue in good faith that he was elected and served for over a decade as an officer of, and in various other capacities for, an organization for which he never was presented with or read the Constitution and Bylaws." Second, the NAACP argues that "Defendant Johnson availed himself of the NAACP's Constitution's protections and procedures when he appealed his original suspension through the formal procedures contemplated in the Constitution. Specifically, Defendant Johnson was afforded a hearing before a three-person panel." (ECF No. 7 at 19.) Third, the NAACP argues that "Defendant Johnson had free will in joining the NAACP, and to terminate his membership at any time, including upon reviewing the terms of the NAACP's Constitution." (ECF No. 7 at 19.)

The NAACP cites no case law to support any of these arguments, and the Court has located none. In short, whether Johnson was presented with, was aware of, or read the Constitution is an entirely different issue to whether he *agreed to be bound* by it. The NAACP alleges no facts to suggest that he did. Nor does the NAACP cite any case law for the proposition that, because he utilized certain procedures provided in the Constitution, Johnson agreed to the forum selection clause contained therein.

Finally, the NAACP argues that this issue has been litigated in Louisiana and that Johnson thus cannot challenge it here. (ECF No. 7 at 15–18.) The NAACP argues, *inter alia*, that Johnson "is precluded from arguing before this Court that . . . he did not agree to be bound by the terms of the Constitution." (*Id.* at 17–18.) The NAACP is wrong. The Louisiana courts did not determine whether or not Johnson agreed to be bound by the terms of the Constitution, much less whether he agreed to the forum selection and indemnification provision. Rather, the Louisiana courts apparently determined that Johnson is a member of the 501(c)(4) and that "[t]he governing documents for both entities reflect that all provisions related to membership were removed from the 501(c)(3) as of March 6, 2019, and are now contained in the Constitution and Bylaws for the 501(c)(4)." (ECF No. 1-2 at 8–9.) While that may reflect that the Constitution is a governing document for the NAACP, that finding simply has nothing to do with whether Johnson agreed to be bound by the Constitution.

## IV.    *Conclusion*

For the foregoing reasons, it is ORDERED that:

1.  The Motion to Dismiss (ECF No. 6) is GRANTED;

2.  The Complaint is DISMISSED for lack of personal jurisdiction;

3.  The Clerk SHALL CLOSE this case; and

4.  The Clerk SHALL MAIL a copy of this Memorandum and Order to Johnson.

DATED this ___1___ day of July, 2026.

BY THE COURT:

James K. Bredar
United States District Judge

9